UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PRIMARY CARE ASSOCIATION, et al.,<br>Plaintiffs,<br>v.<br>SHIRLEY N WEBER, PH.D., et al.,<br>Defendants. | Case No. 26-cv-03837-AGT<br>**ORDER ON MOTIONS TO DISMISS AND FOR PRELIMINARY INJUNCTION**<br>Re: Dkt. Nos. 28, 32, 33 |

Plaintiffs California Primary Care Association (CPCA) and Open Door Community Health Centers (Open Door) (together, Plaintiffs) move to enjoin defendant California Secretary of State Shirley N. Weber from placing an initiative on the November 2026 ballot. Dkt. 1 (complaint); dkt. 28 (motion for preliminary injunction).[1] Weber moves to dismiss. Dkts. 31-1 & 33.

Plaintiffs additionally named as defendants the real-parties-in-interest: Service Employees International Union – United Healthcare Workers West, Shawna Brown, and Sean Fleming (collectively, Proponent Defendants). Dkt. 1. Proponent Defendants also move to dismiss. Dkt. 32.

After hearing oral argument on July 31, 2026, the Court now grants the motions to

[1] The California Hospital Association filed an *amicus curiae* brief in support of the motion for a preliminary injunction. Dkt. 36. The California Medical Association, California Academy of Family Physicians, and the California Chapter of the American College of Emergency Physicians jointly filed an *amicus curiae* brief, also in support of the motion. Dkt. 37.

dismiss and denies the motion for a preliminary injunction.[2]

## I. Background

Initiative No. 25-0008 (the Initiative) is also known as the "Clinic Funding Accountability and Transparency Act." Dkt. 1 ¶ 74. *See also* dkt. 28-1 at 7–14 (text of Initiative).[3] It requires that clinics, which include community health centers, annually report a mission spend ratio to the California Registry of Charities and Fundraisers. Dkt. 1 ¶ 74; dkt. 28-1 at 8.[4]

The mission spend ratio is "the total amount a health center spends on activities that accomplish each center's exempt purpose," divided by the clinic's total revenue. Dkt. 1 ¶ 75; dkt. 28-1 at 8. The California Attorney General may issue guidance regarding how to report the total amount spent on exempt purpose activities and total revenue. Dkt. 28-1 at 9.

Clinics must spend 90% of their revenue on activities that accomplish their purpose. Dkt. 1 ¶ 76; dkt. 28-1 at 11. If a clinic does not spend 90%, then the California Department of Public Health (DPH) shall levy a penalty "equal to the difference between the amount the clinic spent on mission-directed expenses and 90 percent of the clinic's total revenue." Dkt. 28-1 at 11; *see also* dkt. 1 ¶ 76;

Under certain circumstances, DPH may issue a waiver "providing a temporary pause of the 90 percent requirement or for an alternative mission spend ratio requirement . . . ."

---

[2] Citations to argument in this order refer to time stamps from the audio recording of the Court's July 31, 2026, hearing. Upon request, the Court can provide access to the recording. Any such requests should be filed on the Court's docket.

[3] Plaintiffs ask the Court to judicially notice the Initiative, filed at dkt. 28-1. The Court takes judicial notice of the text as it "can be accurately and readily determined from [a] source[ ] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Plaintiffs' requests for judicial notice at dkt. 28-1 and dkt. 40-1 are otherwise denied; the Court didn't rely on those materials.

[4] References to page numbers correspond to the ECF page number at the top of each docketed page.

Dkt. 28-1 at 11. The issuance of the waiver is "solely and exclusively within the authority of [DPH]." *Id.*

## II. Legal Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate where a court lacks subject matter jurisdiction, for example, where a plaintiff lacks standing or brings unripe claims. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). An Eleventh Amendment defense "'is quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

## III. The Eleventh Amendment Immunizes Secretary Weber

Weber moves under Rule 12(b)(1), contending that she is entitled to Eleventh Amendment immunity. Dkt. 31-1. Plaintiffs disagree, arguing that this action is not barred pursuant to *Ex parte Young*. Dkt. 40. The Court now finds that Weber is immune from suit.

"The Eleventh Amendment erects a general bar against federal lawsuits brought against a state," but "does not bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown,* 674 F.3d 1128, 1133–34 (9th Cir. 2012). The latter are permitted under *Ex parte Young*. *See Papasan v. Allain*, 478 U.S. 265, 276–77 (1986).

To determine whether *Ex parte Young* applies, a court "need only conduct a straight-forward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (cleaned up). The official sued must have some connection to the enforcement of the allegedly unconstitutional act. *Coal. to Defend*

*Affirmative Action*, 674 F.3d at 1134.

**A. Ongoing Violations**

Weber argues that Plaintiffs fail to allege that Weber has engaged in any ongoing violation of federal law, indeed, that no violation of federal law is alleged. Dkt. 31-1 at 11. Without that allegation, Plaintiffs cannot overcome the Eleventh Amendment. *Id.*

Plaintiffs respond that Weber has statutory duties to advance the Initiative through California's initiative process. Dkt. 40 at 17. Because Weber qualified the Initiative for the ballot, she is mandated to prepare statewide ballot materials. *Id.* Plaintiffs argue that the Initiative is unconstitutional, and therefore the exercise of Weber's duties here constitutes an ongoing exercise of state authority enabling the enactment of an unconstitutional state initiative. *Id.*

Plaintiffs aren't arguing that the ballot qualification procedures violate federal law. *See id.* Instead, Plaintiffs argue that the Initiative itself is violative and that, by following the ballot initiative statutes (which are not accused), Weber is subject to suit. Such a suit can't properly proceed under *Ex parte Young*. *See Papasan*, 478 U.S. at 277 ("*Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal."); *Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022) (finding that *Ex parte Young* didn't bar suit against Arizona Secretary of State when plaintiffs challenged the Ballot Order Statute, which gave the Secretary statutory authority to prescribe ballot rules).

Furthermore, Plaintiffs cite to no authority in support of their position. *See* dkt. 40 at 17. Plaintiffs concede Weber has no duty (statutory or otherwise) to review ballot initiatives for their constitutionality. Finally, as Weber argues in reply, Plaintiffs' argument would allow any party to invoke federal jurisdiction to enjoin Weber's duties based on an argument

of infirmity. Dkt. 41 at 3. In sum, Plaintiffs fail to show an ongoing violation of federal law.

**B. Sufficient Connection**

Even if Plaintiffs had shown an ongoing violation, Weber argues that Plaintiffs cannot show that she has taken any action to enforce a state law that violates a federal law. Dkt. 31-1 at 12. Plaintiffs respond that they challenge specific official conduct (creation of ballot materials) which only Weber has the authority to perform. Dkt. 40 at 18. An injunction against Weber would prevent the Initiative from appearing on the ballot. *Id.*

As noted above, the official sued must have some connection to the enforcement of the allegedly unconstitutional act. *Coalition to Defend Affirmative Action*, 674 F.3d at 1134. That connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.*

Plaintiffs don't allege that Weber has any connection with enacting the Initiative, beyond listing it on ballot materials. As summarized in Plaintiffs' complaint, DPH would levy any fines, not Weber. *See* dkt. 1 ¶¶ 74–76. Weber therefore doesn't enforce or administer the Initiative and lacks the requisite direct connection. *Cf. Coalition to Defend Affirmative Action*, 674 F.3d at 1134–35 (permitting suit challenging admissions criteria of a university and naming as defendant the university president, reasoning that the president was "duty-bound to ensure that his employees follow [the challenged provision] and refrain from using race as a criterion in admission decisions"); *Mecinas*, 30 F.4th at 903–04 (finding sufficient connection where plaintiffs sued Arizona Secretary of State over Election Procedures Manual that she promulgated).

Without an ongoing violation of federal law or a sufficient connection to such, this

suit against Weber isn't permitted by *Ex parte Young*. Weber is therefore immune from suit under the Eleventh Amendment.

**IV. Plaintiffs' Claims against Proponent Defendants Are Unripe**

Pursuant to Rule 12(b)(1), Proponent Defendants argue that Plaintiffs lack standing and their claims are not ripe. Dkt. 32 at 13. Plaintiffs disagree on both counts. Dkt. 40.

Regarding ripeness, the gravamens of the parties' arguments go to whether discretion left to the Attorney General renders this case unripe and whether California allows pre-election review in a case such as this.[5] The Court now finds that this claim is not ripe or permitted by California's pre-election review doctrines.

**A. Attorney General's Role**

Proponent Defendants first argue that this claim is unripe because the Initiative commits some discretion to the Attorney General. Dkt. 32 at 18. Because the Attorney General has not spoken, any constitutional conflict is speculative. *Id.* Plaintiffs respond that this argument is a red herring because Plaintiffs' arguments arise from the text of the Initiative. Dkt 40 at 15. The Initiative as drafted is unconstitutional. *Id.*

First, as Proponent Defendants reply, dkt. 42 at 7, the Initiative hasn't passed. It might not pass in November. That renders this matter unripe for review because Plaintiffs' claims are "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (cleaned up).

Second, the Initiative empowers the Attorney General to issue guidance on how to

---

[5] Proponent Defendants argue also that no California state court has yet weighed in, counseling against a federal court's intervention, and that Plaintiffs ask this Court to forecast. Dkt. 32 at 18. Plaintiffs don't counter.

report "total sums spent on a clinic's exempt purpose" and total revenue. Dkt. 28-1 at 8–9. Those figures are then used to calculate the mission spend ratio; they are the only two components of the ratio. *Id.* DPH is tasked with assessing penalties on clinics with mission spend ratios of below 90% and is permitted to issue waivers to violating clinics. *See id.* at 11.

Depending on what guidance is issued by the Attorney General, the constitutional issues cited by Plaintiffs may not occur here (even assuming the Initiative passes). So, the Court can't be certain whether or when sanctions might issue, if at all, and that outcome renders this case unripe. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (finding a case unripe, noting that a claim was contingent upon a number of factors and the Supreme Court had "no idea whether or when" a sanction would be ordered).[6]

These claims are not ripe for decision: they are dependent on a passage that may not happen and on guidance from the Attorney General that has yet to issue.[7]

**B. California Pre-Election Review**

Plaintiffs understand that this Initiative has not passed, but they argue that the pre-election review doctrine in California provides a path to bring suit now. Dkt. 40 at 14–15. Proponent Defendants argue that it is more appropriate to review constitutional challenges to ballot provisions after an election. Dkt. 32 at 20–21. Proponent Defendants have the better argument.

---

[6] Additionally, as discussed at the July 31, 2026, hearing, DPH is empowered to issue waivers to clinics falling below the 90% threshold. Oral Argument at 39:00–40:16. This renders enforcement speculative.

[7] Ripeness requires the Court to consider the fitness of the issues for judicial determination. *Texas*, 523 U.S. at 300–01. Here, like in *Texas*, even if the Court assumes greater certainty regarding implementation, the claims aren't ripe. As the Supreme Court noted, there is no pending enforcement action, rendering this case abstract and remote. *See id.* "The operation of the statute is better grasped when viewed in light of a particular application," especially when the provision has yet to be interpreted by the state courts. *Id.*

In California, "it is usually more appropriate to review constitutional and other challenges to ballot propositions or initiative measures after an election[,] . . . in the absence of some clear showing of invalidity." *Brosnahan v. Eu*, 641 P.2d 200, 201 (Cal. 1982). "[T]his general rule applies primarily when a challenge rests upon the alleged unconstitutionality of the substance of the proposed initiative," and "does not preclude preelection review when the challenge is based upon a claim, for example, that the proposed measure may not properly be submitted to the voters because the measure is not legislative in character or because it amounts to a constitutional revision rather an amendment." *Senate of State of Cal. v. Jones*, 988 P.2d 1089, 1095–96 (Cal. 1999).

Even where "the strong presumption against preelection review does not apply," a court should "keep in mind" that where a challenge "generally will *not* become moot if the initiative is approved by the voters at the election" "there is good reason for a court to be even more cautious . . . before deciding that it is appropriate to resolve such a claim prior to an election rather than wait until after the election." *Indep. Energy Producers Ass'n. v. McPherson*, 136 P.3d 178, 183–85 (Cal. 2006).

Plaintiffs bring a substantive challenge to the Initiative, arguing that the Initiative is unconstitutional both on its face and as it will be applied. *See* dkt. 1; Oral Argument at 2:25–6:13. This renders the case distinguishable from recent California Supreme Court decisions allowing pre-election review. In *Costa v. Superior Court*, for example, a challenge based on "several differences between the version of the measure that was submitted to the Attorney General prior to the circulation of the initiative petition, and the version printed on the petition that subsequently was circulated for signature" was permitted. 128 P.3d 675, 676 (Cal. 2006). This isn't that case. At the hearing, Plaintiffs confirmed that no such procedural claim

is brought. Oral Argument at 6:49–7:40.

In *Independent Energy Producers Association v. McPherson*, the California Supreme Court permitted a challenge based "on the contention that the measure in question is not the *type of measure* that may be adopted through the initiative process." 136 P.3d at 180–81. *See also Legislature of State of California v. Weber*, 549 P.3d 884, 909 (Cal. 2024) (permitting a preelection challenge and finding that a "measure exceed[ed] the scope of the power to amend the Constitution via citizen initiative"). The *McPherson* court repeatedly distinguished its case from one in which "a challenge rests upon the alleged unconstitutionality of the substance of the proposed initiative." 136 P.3d at 184. A claim of the latter variety, the court noted, is usually more appropriate for post-election review. *See id.* at 183–84. And it's a claim of the latter variety that Plaintiffs bring here. They don't argue that this type of initiative is not proper; instead, they argue that the Initiative as written and as will be applied is not proper. Oral Argument at 2:25–6:13.[8]

Even assuming that "the strong presumption against preelection review does not apply," *see McPherson*, 136 P.3d at 184, Plaintiffs' challenge to the text of the Initiative won't become moot. They don't argue that it will be, only that pre-election review is preferable. *See* dkt. 40 at 16. But because they could also bring this challenge after the election, the Court should be even "more cautious" before diving in now. *See McPherson*, 136 P.3d at 184–85.

---

[8] Plaintiffs frame the Initiative as beyond the power of the people to enact. Dkt. 40 at 14–15; Oral Argument at 6:30–7:00. The challenge in *McPherson* alleged that the California Constitution precluded a proposed initiative, such that the initiative was not one which the people could enact via initiative. *See* 136 P.3d at 193. But the Court finds that Plaintiffs' constitutional challenge here more properly goes to the substance, not type, of the Initiative. *Cf. City & Cnty. of San Francisco v. Patterson*, 248 Cal. Rptr. 290, 293 (Cal. Ct. App. 1988) (permitting "challenge . . . directed to the power of the electorate to adopt the proposed initiative").

Finally, Proponent Defendants argue that withholding pre-election review doesn't cause any hardship because "even if the measure passes, no obligation attaches until a full fiscal year beginning at least six months after passage has run." Dkt. 32 at 21. In arguing harm, Plaintiffs make only abstract and generic arguments about harm to voters, initiative proponents, and the electoral process. *See* dkt. 40 at 16. These generalized hardships are not unduly burdensome. *See McPherson*, 136 P.3d at 184–85 ("because this type of challenge is one that can be raised and resolved after an election, deferring judicial resolution until after the election—when there will be more time for full briefing and deliberation—often will be the wiser course").[9]

Plaintiffs' claims don't fall within an exception to the general rule against pre-election review. As such, they can be more properly reviewed after the election, if needed.

## V. Plaintiffs Lack Standing

Standing is comprised of three required elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Relevant here, a plaintiff must prove that she suffered an "injury in fact." *Id.* An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (cleaned up). The Court finds that Plaintiffs have failed to allege an injury in fact.

### A. CPCA's Injuries

CPCA claims it has organizational standing. The Initiative forces CPCA to "divert substantial money, time, and resources away from its mission work." Dkt. 1 ¶ 19. If the

[9] Additionally, under the federal ripeness analysis, the Court must consider "the hardship to the parties of withholding court consideration." *Texas*, 523 U.S. at 301. Here, as the Supreme Court found in *Texas*, abstract and remote events are "inadequate to support suit." *Id.* at 301–02.

Initiative makes the ballot, CPCA will need to continue to "divert additional time, resources, and money towards education, advocacy, voter engagement and campaigning, analysis, and other activities that divert resources and attention" away from CPCA's mission. *Id.* As Proponent Defendants argue, dkt. 32 at 15, these expenditures do not constitute a cognizable injury in fact. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394–95 (2024) ("an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action").

Plaintiffs' reliance upon *Havens Realty Corporation v. Coleman* for organizational standing is misplaced. 455 U.S. 363 (1982). In *Havens*, a housing counseling organization had standing to bring a Fair Housing Act claim against the owner and operator of apartment complexes. *Id.* at 367–68 & 382. That owner-operator provided the plaintiff organization's Black employees with false information regarding apartment availability, which impaired the plaintiff's ability to provide counseling and referral services for low-income apartment hunters. *Id.* at 368–69 & 379. Here, though the Initiative might impact CPCA's counseling agenda, CPCA's ability to provide counseling hasn't been impaired by the provision of false information, or otherwise. *See AZ All. for Retired Americans v. Mayes*, No. 22-16490, at 21 (9th Cir. Aug. 7, 2026) (en banc) (finding that where an organization could not allege harm to its core activities, expenditures to better inform its members and the public did not establish injury). Furthermore, the Supreme Court recently counseled that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *All. for Hippocratic Med.*, 602 U.S. at 396.[10]

---

[10] Plaintiffs' other cited authority, *Immigrant Defenders Law Center v. Noem*, is

If the Initiative passes, CPCA claims that it would need to "divert additional time, resources, and money to assist its members to understand and respond to the requirements in the Initiative." Dkt. 1 ¶ 19. Because the election has not yet occurred, the Initiative has not passed.[11] Harms linked to its passage are not imminent or assured. Additionally, as addressed above, even if the Initiative passes, the Attorney General and DPH are allotted some discretion to issue guidance and waivers. So, the harms alleged are further rendered only speculative, not impending. *Cf. All. for Hippocratic Med.,* 602 U.S. at 381 ("injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon").

CPCA lacks organizational standing.

**B. Open Door's Injuries**

Open Door is a CPCA member. Dkt. 1 ¶ 21. It claims that it has "diverted money and human resources to analyze the Initiative; educate staff, patients, or other stakeholders; consider and modify capital expenditure and other spending plans; consider and modify fundraising goals and plans; and consider and modify proposals and applications for federal grants and other nonfederal revenues. Open Door also has contributed money to support the

---

distinguishable because that organizational plaintiff challenged a policy which was otherwise in force and would impact their operations. 145 F.4th 972 (9th Cir. 2025). So, the decision doesn't provide support for an organization spending money to advocate against the passage of a ballot initiative. *See id.* at 988 "[Plaintiff organization] is not 'assert[ing] standing simply because [it] object[s] to [the government's] actions' or is gathering information and advocating against [the policy].")". Furthermore, *Immigrant Defenders* is overruled to the extent that it relied upon *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021), for its organizational standing analysis. *AZ All. for Retired Americans*, No. 22-16490, at 19 n.2.

[11] This also renders causation wanting here. *See All. for Hippocratic Med.*, 602 U.S. at 383 ("The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs."). Plaintiffs don't argue that the electorate would react predictably.

campaign against the Initiative." *Id.* ¶ 22.

As argued by Proponent Defendants, dkt. 32 at 15–16, these actions are voluntary and self-imposed. Plaintiffs' response, that Open Door had to act "to avoid or mitigate the Initiative's impending penalties," dkt. 40 at 10, ignores that the Initiative has not passed and may never pass. The Initiative imposes no requirements upon Open Door to engage (or dis-engage) in any actions; indeed, it can't.

In opposition, Plaintiffs describe in detail the risks posed to community health centers by the Initiative. Dkt. 40 at 9–11. Because the Initiative is only a proposal, these harms are not imminent or actual.[12]

Open Door lacks standing.[13]

## VI. Conclusion

Secretary of State Weber is shielded from suit by the Eleventh Amendment; her motion to dismiss, dkts. 31-1 & 33, is granted. Plaintiffs' claims against Proponent Defendants are not ripe and Plaintiffs lack standing to pursue them. So that motion to dismiss, dkt. 32, is also granted. Plaintiffs' complaint is dismissed under Rule 12(b)(1) without prejudice. Leave to amend would be futile.

/ / /

/ / /

/ / /

[12] This also renders Plaintiffs' pre-enforcement authorities distinguishable. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (statute already enacted, enforcement threatened); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) (statute already enacted, plaintiff alleged credible threat of prosecution); *Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014) (causation sufficiently alleged where plaintiff spent years in detention after failure to post bail, when bail bondspersons refused bail because of immigration detainer).

[13] CPCA also claims associational standing on behalf of members such as Open Door. Dkt. 1 ¶ 20. This standing fails for the reasons stated here.

In light of this order, Plaintiffs' motion for a preliminary injunction, dkt. 28, is denied.

**IT IS SO ORDERED.**

Dated: August 7, 2026

Alex G. Tse
United States Magistrate Judge